United States v. Hussein has been submitted on the briefs. Council, for appellate, please approach and proceed when ready. Thank you, Your Honor. Good morning, Your Honors. I would like to reserve five minutes for rebuttal. Could you introduce yourself? My name is Jed Silversmith. I'm here on behalf of the appellant, Pavel Lazarenko. All right. I would ask that the Court allow me to just briefly cycle through some of, I think, the more salient motions that have been filed in these two cases that are both, what, 1,500 docket entries each. Critically, as it relates to this appeal, as the Court knows, in the middle of Mr. Lazarenko's trial, Judge Jenkins entered a mid-trial Rule 29 order that effectively reached most of the money in the case, even though it didn't necessarily reach all of the accounts. Shortly thereafter, within a week, the government filed a civil forfeiture complaint restraining assets, including the Bank Julius Baer account. That complaint alleged that the money in that account was traceable to the conviction of Mr. Kurochenko and the money laundering conspiracy alleged in this indictment. It was verified by a special agent. Approximately one year later, ECF-20, on June 30, 2005, ECF-20 in the civil case, this was filed in the criminal docket for Judge Breyer's convenience. The NRKTO account was added to the case. In April of 2015, we deposed the verifying case agent, Deborah Leprovod. The excerpt of her testimony is filed in the criminal case below. It's 1732-2, pages 52 to 53. She testified that she recommended restraining the BJB account because it contained money from Peter Kurochenko. Shortly thereafter, actually seven years to today, we filed a motion for summary judgment, August 12, 2015, called the unknown payments motion. And in that motion, we challenged the restraint on these accounts. That motion is still pending with Judge Friedman. In that motion, in response to that motion, at ECF-486, which is filed in the further excerpts of record and also filed below at 1735, the government argued that the conviction for the money laundering conspiracy count, count one of the superseding indictment in the criminal case, taints all of the assets in this case. Approximately 18 months later, in March of 2017, the government produced its final tracing report. That final tracing report defined the term proceeds as any money passing through Mr. Kurochenko's bank accounts, essentially any money that was part of the conspiracy. So what is the punchline of this? So that, and that's what I was getting to. That report, which is in the excerpts of record, included that every account but the BJB in our KTO account contained Kurochenko money. The two accounts, BJB and our KTO, that we're here for today were effectively untainted by the conviction, or at least as the government would define. Why does that matter? Because the government is required under 853A to take the tainted money first. And if their position in the civil forfeiture case is the tainted money is from these other accounts, we believe that they need to move for forfeiture of those accounts first. Well, the statute says they can get any other property. It doesn't characterize the property as tainted or untainted? Well, 853P2 says that the government can get any other property if the property in A1 is unavailable. In this property, at least according to the government, the money in Lichtenstein is money that is A1 property. So it's still available. So our position is that's the money they need to take first. And by the way, if they take that money, there's sufficient money to pay the entire judgment, however it's computed. It would resolve this case completely. And that's what we want. This court can't force the government to do, but that's what we want to have happen. And we think the first step is to deny the government the right to seek a preliminary order of forfeiture. I mean, it seems if your client had money that he believed he could pay and was willing to pay, there wouldn't have been the lengthy proceedings that have happened in so many courts on just trying to satisfy this judgment. I respectfully disagree, Your Honor. We filed a motion in the Royal Court of Guernsey to apply some of the in-rem defendants to the forfeiture money judgment. That ultimately ended up in a contempt proceeding before Judge Friedman, and we withdrew the motion in the Royal Court of Guernsey. That's actually what's now on appeal in the D.C. Circuit. And that decision is published at 244 F. Supp. 3, 188. So we can't use this money. We are restrained by District Judge Friedman's restraining order from paying the forfeiture money judgment. It's only the government that can select which assets get to be paid. And our position is the government shouldn't be allowed to play effectively ping-pong between the two proceedings. Come to the end of this criminal case, not seek direct forfeiture. Say they want to forfeit the money civilly, and once a summary judgment motion is pending, as is the case with the BJB account, and the district court instructs the government to file a SIR reply, come running back to Judge Breyer and say, now we want substitute asset forfeiture. What's the status of the D.C. Circuit appeal? Has it been argued? It has been argued. It was argued December 2nd. We've lost two judges. The first judge, Judge Ginsburg, recused right before argument. The second judge, Justice now Katenji Brown-Jackson, was elevated. So we don't know whether we're going to get a third judge or it's going to be decided by the two. But that appeal deals with the Balfour Trust, which is a different bank account than we're talking about here. But again, we would have been happy, the motion we filed in the royal court that sort of spawned all that litigation was to apply the funds in the Balfour Trust to pay the forfeiture money judgment. And I'd ask you to, I'd refer you to DKT in this case, 1766-6. That was a letter we sent to the government in November of 2015 asking them to apply funds to the forfeiture money judgment, and they've refused consistently. So, you know, we think it's not fair and it's not consistent with the statute to let the government come in and swoop up. I mean, $2 million is a lot of money, but in this case it's not a lot of money. And with Mr. Lazarenko's bills, it's certainly not a lot of money. This relatively small amount of money when there is ample money that is restrained and consistent with their tracing report that should be used under A-1 to forfeit these funds. And we would concede. We would concede today. We would waive any objection under Federal Rule 32.2E1A that they can use direct forfeiture of the Lithuanian or Antiguan money to satisfy the forfeiture money judgment. Now, we wouldn't concede it's traceable like the Smith case that the government cites from the Seventh Circuit. We would concede it's forfeitable. And that's all we want. But, counsel, hasn't the money in Antigua already been forfeited to the Antiguan government? And as far as the Lithuanian assets, it appears that those assets are frozen and that Mr. Lazarenko has disclaimed any ownership or control over those funds. So it's hard to see how those funds are available and that it would in any way satisfy the forfeiture here. Well, respectfully, Your Honor, the government contends that we've disclaimed our interest in the Lithuanian money. We have not disclaimed our interest in the Lithuanian money. We have never disclaimed our interest in the Lithuanian money. The government took one line from our interrogatories, which was basically a summary of Judge Friedman's findings, and said, that's it. You've disclaimed your interest in this property. We have challenged the government's motion to strike. And I think it's telling that the government waited 18 years to strike our claim on Article III grounds. I mean, standing is typically litigated at the beginning of litigation, not in the third decade. Well, even if your client hasn't disclaimed interest in those funds, hasn't the Lithuanian government frozen those funds? How does the United States government then seize them? They're in Lithuania. They're restrained by the Lithuanians at the request of the U.S. government. All these funds are held outside of the United States, subject to U.S. requests for restraining orders. So, for example, the money in Guernsey is restrained under the Guernsey Proceeds of Authorities to initiate that restraint. And all of the funds are restrained outside of the United States with the representation by the United States that when a forfeiture judgment is entered, they will be repatriated. So, it's clearly available for forfeiture. But what about the Antiguan funds? Haven't they already been forfeited by the Antiguan government? Well, the Antiguan government would say they're still available for forfeiture. That's what they've represented. The U.S. government initially took that position. But, you know, that's something that can be decided by Judge Breyer. And the reality is, whether it's Antigua or Lithuania, either account is sufficient to pay the forfeiture money judgment. And the Lithuanian money, even though the government filed a motion to strike, it's still available for forfeiture. And by the way, even if Mr. Lazarenko's claim is stricken, the government can still use criminal forfeiture to take the money. I mean, it's obviously Mr. Lazarenko's money, despite their motion. So, why does the statutory scheme allow the defendant to determine which source of funds are used for the forfeiture once the government establishes that funds that were subject to forfeiture have been dissipated or made unavailable by the defendant? It seems to me you're arguing that the defendant still has the right to direct which funds the government can use as substitute funds for forfeiture. And I don't think that the statute allows that. The statute says the government can take any funds, any substitute funds. Well, it does say that. But first, you know, based on the government's tracing report, the money is still available under A-1. So, P-2 shouldn't come into play. That's the first response. I mean, the other part of it is... I mean, which money is still available? Because they're saying the funds have been dissipated in the mansion that was related to Count 7 and then the funds in the bank account that were dissipated. They're not saying... I don't think they've said the Antiguan or Lithuanian funds that the defendant dissipated those funds. Right. But their position is that all this money is traceable to Count 1. And if their position is that Count 1 is a traceable count of conviction, then they should have to apply those funds first. But aren't their funds traceable to other counts of conviction, like Counts 7 and 8? You know, it was all one conspiracy, and those were the substantive counts of the conspiracy. So, you know, their position is inconsistent. But, you know, the challenge is here, they're asserting different positions in different districts. And that... Are you suggesting that all of these counts merge? If you're convicted on eight counts or whatever number of counts, that the government can't look to the underlying convictions to decide what funds are forfeitable? They somehow have to go to the conviction that you, that the defendant, designates? You know, in this case where they've restrained the money on a theory that it's traceable, yes, I do think so. I mean, normally, in a normal case where there's just criminal forfeiture, no. I don't think the defendant should be ordered to do that. But this is a case where they've restrained the money for 18 years. They have held us up from trying to do the right thing. And Mr. Lazarenko, I think, would have good defenses not to pay this money. Maybe he'd win, maybe he wouldn't. But he doesn't want us to raise them. He wants this paid. And instead, they're standing in the way. I mean, I think a fair question is why can't we employ the money in Lithuania? I know they filed a motion to strike, but it's under their control, and it can be employed to satisfy the forfeiture money judgment. What exactly do you want to happen here? Because your client has judgments against him. He seems to have assets, and you're making it sound as if, you know, this should be quite easy. These could be paid. I don't think it's quite as easy as you say. But what is it that you actually would like here? Well, I would like this Court to vacate Judge Breyer's preliminary order for forfeiture. But what's your global plan for resolving this, I guess, is my bigger question, because you want this order vacated. That would solve one problem. You have others. Well, I think that if this Court vacated the preliminary order for forfeiture, the government could then employ the money in Lithuania, which is subject to this motion to strike. But, you know, it took 18 years to file the motion to strike, so there should be some uncertainty. And, again, even if it's stricken, it can still be employed. There's no other claimant to the property, and it can be used to satisfy the forfeiture judgment. And that would resolve this portion of this incredibly long-running case. And we can't do that. We are prohibited by 983J1A from taking this money that's restrained and applying it to the judgment. But the government is not, and they are standing in the way. And I think a fair question would be how does this advance the goals of forfeiture to leave an unpaid forfeiture judgment of $14 or $17 million? The position you're describing for the government doesn't make sense. If there was money readily available that could be used to satisfy the forfeiture, why wouldn't they do that? And, conversely, why does your client object to if he wants a forfeiture judgment paid, why does he care which account is used to pay the forfeiture? A couple, and I'm running short on time. First of all, if you look at docket 1644 at page 3 and 1642 at page 3, you can see way back when we specifically said take a small portion of the in-rem defendants, and the government's response at that time was that would violate public policy to apply any of the in-rem defendants to pay the forfeiture money judgment. 1644 at page 3. Second, to answer your question, I mean, there are certain ordering rules. For example, the money in Lithuania is in a liquidation proceeding, but the government has reached a settlement with the liquidators that if there is a forfeiture judgment entered, the money will be paid back to the U.S. government in satisfaction of that forfeiture judgment. In contrast, if Mr. Lazarenko has to continue to litigate, there will be additional hearings in Antigua. I know it's Lithuanian money, but the hearings would still be in Antigua over that money. So it just is a matter of simple accommodation and resolution. Plus, what goal does it serve to forfeit a tiny account when the judgment remains unpaid? And how do we get an offset if the government forfeits the small account now and then later gets a forfeiture money judgment? Sorry, forfeits the assets under basically directly traceable theory in the civil case. So, you know, that's their theory. This is directly traceable. Use those funds first. It will begin to bring this case to closure. If I can reserve the rest of my time. Of course. Thank you. May it please the Court, Hunter Smith from the United States. The argument that Mr. Lazarenko presented differs in significant respects from the primary arguments he made in his briefs. I now take it that Mr. Lazarenko is arguing that the United States cannot forfeit as substitute assets the two accounts which the district court ordered forfeited because there are other assets in Lithuania and Antigua that the U.S. should forfeit first. That's incorrect as a matter of both law and a matter of fact. I've not seen any argument or any authority, any case, or even statutory text that sets some kind of hierarchy of which substitute assets the U.S. has to forfeit. The statute says the U.S. may forfeit any other property of the defendant if the defendant has depreciated or diminished directly forfeitable assets, which the district court found he had. And the BGB funds and the NRKTO funds are indisputably Mr. Lazarenko's funds. The assets in Lithuania – so first of all, there's no requirement the U.S. go after the assets in Lithuania or Antigua first before it seeks to forfeit the assets in Liechtenstein and in Guernsey. Second of all, as I believe Judge Beatty pointed out, it's at the very least intensely disputed whether or not the assets in Antigua and Lithuania are available for forfeiture. The Antiguan government has already forfeited the assets in Antigua, and there's litigation in multiple places concerning who, in fact, owns the Lithuanian funds. The liquidators of the bank that Mr. Lazarenko bought have also asserted a claim to the Lithuanian funds and Mr. Lazarenko once promised to repatriate these funds in order to pay his bond in the criminal proceedings but was unable to do so because there were freeze orders in place from other countries, I believe, including Ukraine, and also claims by the bank that the money, in fact, belonged to the bank. So while the record in this case is quite complex, the issues are, in fact, quite simple. The district court found on an unrebutted record that Mr. Lazarenko had made $2.8 million in funds that are traceable to accounts 7 and 8 unavailable for forfeiture. That was not a clear error. The district court then found that because the statute allows the government to forfeit any other property of the defendant as substitute property, and the BJB funds and our KTO funds are indisputably Mr. Lazarenko's funds, that it was proper to order their forfeiture of substitute assets. Counsel, why has this forfeiture proceeding dragged on so long? The civil case has taken a while quite simply because Mr. Lazarenko's money laundering scheme was incredibly complex. It involved assets in Antigua. It involved the purchase of a bank in Antigua, which then placed funds in Lithuania and elsewhere. And it's also involved multiple claimants. Some of Mr. Lazarenko's co-conspirators claimed that they were entitled to the funds. There have also been claims from Gazprom, the Russian oil and gas company, and some of the money, in fact, is owed to them. And it's taken quite a while to resolve all those claims. Has it been over 20 years? It is not quite 20 years, Your Honor. I believe it's 18 years. Wouldn't you agree that's an extraordinarily long time for a forfeiture proceeding to continue? It is, Your Honor, and that's exactly one of the reasons the U.S. moved for substitute forfeiture below, because the civil proceedings are unfortunately slow-moving and there has not been a trial yet. So while it's true the BJB funds and NRKTO funds may be forfeited eventually in the civil proceedings for Mr. Lazarenko's other criminal conduct, not the criminal conduct for which he was convicted below, there still had to be a trial, and, in fact, they're pending motions of summary judgment right now. So it's had to be resolved first, followed by a trial, while the government a couple of years ago looked at these cases and decided, what are the ways in which we can streamline this very complex litigation? And one of the ways to do so was to move for substitute forfeiture below, where Mr. Lazarenko has already been convicted, already sentenced to pay a $21 million judgment, and the BJB funds and NRKTO funds are indisputably Mr. Lazarenko's funds. So this is the simplest way to end this chapter of the case. Could that have been done earlier? It perhaps could have been done earlier, Your Honor, but there were reasons it was not. There were other claims by third parties to the BJB and NRKTO funds, and also it was not at the time clear that Mr. Lazarenko was the sole owner of the funds. When Mr. Lazarenko filed a motion in the civil proceedings in which he took the position that the BJB funds and NRKTO funds are untainted, which is the reverse position, which he seems to be taking on this appeal, at that point, and that he was the sole owner of the funds, it made sense to the government at that point that the two key facts seemed to be undisputed, and the U.S. therefore moved for substitute forfeiture below. Your opposing counsel suggested this case could be easily resolved. There are funds available, and they're willing to pay them, which, if true, would suggest the government's taking an absurd position. So can you address that? I mean, if I understand his argument, it's based on the availability of the infrequent funds and the Lithuanian funds, which you've said are not available. Is there any way this could be settled? Is there any easy resolution for this other than continuing to litigate? Because even if the government prevails here, it's only $2.8 million, and out of almost $20 million remaining in the judgment, $19 million. The government is open to settlement discussions. It's had them before. In fact, one of the reasons the civil case has lasted for so long was that it was staged for several years while settlement discussions were occurring. So far they have been unproductive. But, of course, the government is always open to continuing discussions, Your Honor. There are a number of characterizations of the record, which I would like to correct. My friend referred to all the money as being traceable to Count One in the civil case. That's simply not true. Count One is the money laundering conspiracy in the criminal case. In the criminal case, the U.S. did not seek any forfeiture pursuant to Count One. The way the money judgment was calculated was the U.S. took the transactions that were involved in Counts Two through Eight, added up the number of the transactions, and then also added roughly a million dollars of appreciation on the Novato mansion, and that is how the money judgment was calculated. The conviction below on Counts One through Eight relates solely to the extortion of Mr. Kirichenko. Mr. Kirichenko later was involved as a money launderer, but that is not what—he was a co-conspirator of Mr. Lazarenko. But that is not what any of the—Mr. Lazarenko was not convicted for that activity. In the civil case, it's true the U.S. alleges a money laundering conspiracy, but it is a much larger money laundering conspiracy. It involves not just the extortion of Mr. Kirichenko. It also involves the extortion of Mr. Tchaikovsky. It also involves three different large fraud schemes for which the district court below entered judgments of acquittal. And there's also further conduct that's alleged in the civil conspiracy that wasn't even indicted in the criminal case in the first place. So it's not true to say that all the money in the civil case is traceable to Count One. It's true it's traceable to a money laundering conspiracy, but it is a much larger money laundering conspiracy. It's not the money laundering conspiracy for which Mr. Lazarenko was convicted in this case. So if you prevail here, there's still extensive proceedings, it sounds like, that need to happen in D.C. That's true, Your Honor. In fact, there's a pending motion for summary judgment as to the BJB funds in D.C. Of course, the D.C. District Court was apprised of the substantive assets motion in this case as soon as the government filed it and has not acted on the motion for summary judgment since. And Judge Breyer, of course, was aware of the proceeding in D.C. and declined to exercise his discretion under the first-to-file rule or any other equitable rule to stay his ruling below. And I recognize Mr. Lazarenko challenges that decision, but there's no reason to think it was an abuse of discretion. I guess part of what Mr. Lazarenko is saying is I've been in these civil proceedings for some time in D.C., and those are taking their course, and here I am now back in criminal proceedings. Is there anything inherently wrong with that? If Mr. Lazarenko had paid his criminal money judgment, then it might be a different question, but I don't think there's anything inherently wrong with that. In fact, in some ways, Mr. Lazarenko may benefit from having these assets released from the civil case. He's saying that he wants other assets released from the civil case in order to pay his money judgment, but the government is agreeing that the BJB funds and our KTO funds can be dropped from the civil case and used to pay his money judgment because he is the undisputed owner of those funds. So I don't think there's anything wrong with the fact that he's here, again, in the criminal proceedings. And in some ways, I mean, it's Mr. Lazarenko's choice, of course, but it seems that he would benefit from having these funds applied towards his money judgment. Why do you say that last part? Because he has a $21 million or, at this point, $19 million outstanding judgment. You heard my friend was concerned that he's unable to pay the money judgment because some of his funds have been restrained. As for the BJB funds and our KTO funds, which are indisputably his, the government agrees that the funds can be released from whatever restraining order exists and they'll be dropped from the civil case and applied to pay part of the money judgment here. Your Honor, if we'll see further questions, I intend to rest on the brief. It appears not. Rebuttal. Thank you, Your Honor. Preliminarily, the liquidators settled with the United States in 2014, and that order settlement was approved in November. It's docket number, I think, 334. They do not have a claim to this money. They specifically settled. And as part of that settlement, if the money is forfeited, they will release any claims and allow it to go to the United States. So in our opinion, applying these funds simply resolves the forfeiture money judgment. There is no claim by the liquidators outstanding. In fact, to the contrary, if the liquidators' lawyer were here today, he would be jumping up and down because of the money in Lithuania, and there's two other accounts in Switzerland for about $5 million, they're entitled to 22.5 percent. Mr. Lazarenko is entitled to challenge the forfeiture of 78 percent. Their money has not come back, despite the fact that they settled eight years ago because we cannot get a final forfeiture order in either district. Second, to respond to Judge Bates' concern, the government's position in the D.C. forfeiture litigation is that Mr. Lazarenko relinquished his control of this money when he deposited it into the Eurofed accounts. Respectfully, and they take one sentence from our interrogatories to argue that we have relinquished any claim to this money. That is not true, and we have filed numerous documents in response to their motion for summary judgment. I would also tell the Court that that motion for summary judgment to strike his claim was filed in July of 2020, 16 years after they initiated the case. Civil forfeiture standing is litigated at the beginning of the case, not 16 years later. So I don't believe that the money is unavailable for forfeiture, and I don't believe it's safe to say that they're going to prevail in that motion, and I don't believe it's safe to say that if they prevail, in light of the evidence that we've attached to our motion, some of which we provided to this Court, like Special Agent Earle's testimony, that this was Mr. Lazarenko's money and he's never heard anything different and that that was what they presented at his criminal trial, I do believe that there is a genuine issue of material fact that he has Article III standing to contest the forfeiture of that money. And I wouldn't use the motion to strike as a basis not to resolve the forfeiture in this Court. Further, as I said, the liquidators settled. They're not coming back to this Court. They have a settlement, and they are barred by res judicata from coming back to this Court. You know, in terms of your question, Judge Rawlinson, this has taken an incredibly long time. The motion we filed seven years ago has been pending. There have been no other claims to the BJB account. Those claims were stricken. It was Gazprom and Utico were stricken in 2012. The government could have employed those assets a decade ago, and we offered them to the government, you know, before we filed these motions for summary judgment. They only came to Judge Breyer after Judge Friedman ordered the government to file a surreply responding to the arguments in our reply in the motion for summary judgment. This is a very small amount of money in terms of the overall debts that Mr. Lazarenko has, and I would like to add he is indigent. He is not paying us an hourly fee to be here. He has no money. The government contends he stashed millions of dollars offshore. They've never recovered a penny, and as far as I know, he has no money offshore. So, you know, for the government to say he could just pay the forfeiture judgment, he cannot pay the forfeiture judgment, and he cannot pay the fine because the money is restrained in the civil forfeiture case. All of his money is restrained there, and he is essentially a hostage to the calendar of the district court judge there that has, you know, taken 18 years to resolve the case. And that's why, you know, if you tell the government they can't take the BJB account, the court will have to rule on the summary judgment motion, and then, you know, they can apply these Euro-fed funds. It will pay the forfeiture money judgment, and either the remaining funds will be determined to be untainted because the court will reject their forfeiture theory, or, in which case, they'll be employed to pay the fine, or, you know, they'll be forfeited as directly forfeitable. But, you know, that's the only way to sort of resolve this and move this forward. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. That completes our calendar for the morning and for this week. We are adjourned. All rise. Court for this session stands adjourned.
judges: RAWLINSON, BADE, BRESS